BRANDER, WILLIAMS & Co. et als. *v.* BOBO, Sheriff et al.

The defendant, whose property has been seized under an execution, and who has given a delivery
bond under the Act of 1842, (Rev. Stat., p. 528, Sec. 5,) may make a valid sale of the property.
The judgment creditor cannot seize the property in the hands of the vendee; his remedy is
against the parties to the bond. And when the sheriff has declared the bond forfeited, subsequent
seizing creditors cannot complain of informalities in the declaration of forfeiture. It is an an-
swer to them to say that the bond was rightfully forfeited.

APPEAL from the District Court of Morehouse, *Richardson*, J.
*Mathews & McFee*, for plaintiffs. *J. T. Ludeling*, for defendants and ap-
pellants.

MERRICK, C. J. We take the statement of facts in these consolidated, cases
from the brief of appellants' counsel, which we find sufficiently accurate.

On the 18th January, 1854, *Palmer & Co.* obtained judgment against *Thomas
N. Barham*, for $1,140 06, with eight per cent. interest from 16th of April,
1853.

On the 3d of February, 1854, execution was issued under the judgment.
On the 7th of February, *Thomas N. Barham* pointed out "one town lot with
the buildings thereon;" and afterwards gave a delivery bond for the property,
with *Bales B. Billingsly* as his security. The property was offered for sale on
the first Saturday of April, for cash, and there being no bid, the property was
re-advertised for sale on twelve month's credit. This sale was enjoined; and
in January, following, the injunction was dissolved.

In the meantime (9th June, 1854,) *Thomas N. Barham*, sold the property
(pointed out by him to be seized, and released by delivery bond) to *Milten-
berger*, for $2,500.

On the 27th of January, 1855, the property was re-advertised, and on the
day appointed, the sheriff offered the property for sale, *notwithstanding the
property had not been delivered to him;* and *Thomas N. Barham* and *Mr.
Todd*, the agent of *Miltenberger*, prohibited the sheriff from selling it, as it
was the property of *Miltenberger.*

The sheriff acting under instructions from the attorney of *Palmer & Co.*,
given before he had any knowledge of the sale to *Miltenberger*, bought the
property for *Palmer & Co.*, and at the same time declared the delivery bond
forfeited for the residue.

On the 7th of March, 1855, execution was issued on the forfeited delivery
bond; and on the 8th the sheriff levied on two negroes, *Thornton* and *Westley*.
*B. B. Billingsly* executed a delivery bond for the property. Before the day of
sale, one *Green Shropshire*, to whom these and other slaves and property of
*Billingsly* had been transferred before the seizure, sued out an injunction on
the grounds that the negroes seized were his property. This injunction was
subsequently abandoned by *Shropshire.*

On the same day that the negroes above mentioned, were seized under *Pal-
mer & Co.'s* execution, the sheriff levied on a boy named *Bob*, about 14 or 15

years old, to satisfy the execution of *Brander, Williams & Co.*, for $464 93, with 8 per cent. from 8th July, 1854. This negro was sold *to pay the said execution*. The records do not show for how much.

On the 28th of June, 1855, the sheriff levied on a negro named *Charles*, in the cases of *Smith & Heard, Executor*, v. *Billingsly*, and *John G. Williams* v. *Billingsly ;* and on the 27th of June, he levied on the negroes, *Thornton, Westley* and *Bob*, under an execution in the cases of *R. B. Briscoe & E. Farris ;* and on July 5th, he levied on *Thornton* and *Westley*, under the execution of *Brander, Williams & Co.*

One of the houses or buildings on the lots seized, bonded for and transferred to *Miltenberger*, was burnt at the time of the sale, and notwithstanding the opposition of *Barham* and *Miltenberger*, the property was sold and a credit of $382 was made upon the execution, and the bond was declared forfeited for the residue on the ground that the house was not delivered.

The principal question raised in this case, is the effect of the forfeiture of the forthcoming bond.

The Statute of 1842 reënacted in 1855. Rev. Stat., p. 528, Sec. 5, is in these words, viz : "Sec. 5. The defendant in execution whose property has been seized, shall have the right to retain the property in his own possession from the time of such seizure until the day of sale, on condition that said defendant shall execute his bond in favor of the plaintiff in execution, in solido, with one or more sufficient securities domicilliated in the Parish, for the amount one-half over and above the estimated value of the property seized, conditioned for the faithful delivery of the property at the time of the sale, which bond shall be filed in the office from which the writ issued within ten days after the date thereof; and upon forfeiture of said bond, which fact shall be made to appear by the certificate of the officer charged with the execution of the writ, the same shall have the same effect as a twelve months' bond, and execution shall issue thereon, on application of the plaintiff or his attorney, against all the parties to said bond."

The appellees contend, under this Statute, that the execution of the delivery bond does not release the seizure, though it permits the property to remain in the custody of the debtor, and that the debtor can no more legally sell or dispose of the property than if no such bond had been executed. The appellants contend that the sale to *Miltenberger*, after the execution of the bond, was a valid sale, and the sheriff was justified in declaring the bond forfeited.

The Statute evidently confers upon the debtor the option to continue the possession of the sheriff, (in which event he would be the agent of the sheriff, ) or to defeat the seizure and possession of the sheriff altogether. For it is obvious, that if the debtor refuses to produce the property, the sheriff has no power to seize it again, and that if the sheriff has no power over the property, and no control, the debtor, correlatively, must have entire control, and can as easily defeat the possession of the sheriff by selling and delivering the movables and executing his written conveyence of the immovables to a third party the day after executing the forthcoming bond, as on the day appointed for the sale.

The bond was violated when *Barham* put it out of his power to make a valid delivery of the property to the sheriff, and when he and his vendees, *Miltenberger & Co.*, 'forbid the sale, having no legal possession, the sheriff could not sell. There was then, a just cause on the part of the sheriff, to de-

clare the whole bond forfeited, and having declared it forfeited for all but $382, third persons cannot complain of informalities in the mere form in which the sheriff has made the declaration of forfeiture. *Barham* or *Billingsly* may possibly complain, but not other subsequent seizing creditors. It is an answer to them to say that the bond was rightfully declared forfeited, and the form in which it was done, in no manner prejudices them.

*J. H. Palmer & Co.*, are therefore entitled to the proceeds of the sale of the slaves sold upon their execution, unless the opponents have superior privileges and mortgages.

We concur with the District Judge that *Brander, Williams & Co.*, as mortgage creditors, are entitled to be paid the balance of their judgment.

As to the other parties, they are entitled to be paid only in the event a surplus is left, and according to the date of their seizures.

The deed to *Shropshire*, as correctly observed by the District Judge, has no influence upon the decision of the case as between these parties.

We find, on examining the case to ascertain the costs and the rank of creditors, that there will only be sufficient to pay the costs, the judgment of *Brander, Williams & Co.*, and the execution of *J. H. Palmer & Co.*, disregarding the erroneous credit on the execution.

It is, therefore, ordered, adjudged and decreed, that so much of said judgment as decrees a preference to *Brander, Williams & Co.*, out of the proceeds of the slaves *Thornton* and *Westley*, for $267 45, be affirmed, and in other respects said judgment be avoided and reversed. And it is further ordered, that the residue of the price of said slaves, viz: $1,296 55, be paid to said *J. H. Parham & Co.*, to be credited upon their said execution for debt, interests and costs. And it is further ordered, that the oppositions of *R. B. Briscoe* and *Eugene Farris*, be dismissed, and that the costs of the appeal be equally born by the said *R. B. Briscoe, Eugene Farris* and *Joseph H. Palmer & Co.*, and that the costs of the lower court be also divided in the same manner.